United States District Court
Northern District of California

1
2
3
4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    AARON ROBINSON,                          Case No.  5:24-cv-06501-PCP

                   Plaintiff,
8
                                              **ORDER GRANTING IN PART AND**
9         v.                                  **DENYING IN PART MOTION TO**
                                              **DISMISS**
10   ALEX BINELLO, et al.,
                                              Re: Dkt. No. 19
                   Defendants.
11

12         Plaintiff Aaron Robinson brings this copyright infringement action against defendant

13   Roblox for allegedly allowing game designer Alex Binello to upload Robinson's work without his

14   knowledge or permission to the Roblox platform, where users listened to and downloaded it.

15   Roblox moves to dismiss for failure to state a claim pursuant to Rule 12(b)(6). Roblox also

16   requests judicial notice or incorporation by reference of several pages on the Roblox website. For

17   the following reasons, the Court grants the motion to dismiss as to the contributory copyright

18   infringement claim, denies it as to the direct and vicarious copyright infringement claims, and

19   grants in part the request for judicial notice and incorporation by reference.

20                                    **BACKGROUND**

21         Robinson is a composer, conductor, and musicologist.[1] In 1993, he performed and recorded

22   Maple Leaf Rag, a song originally composed by Scott Joplin, on piano. He first published the

23   recording on an album in 1993, and then re-published it on another album in 2011. The first album

24   was registered with the United States Copyright Office on June 27, 2024, registration number

25   SR1-002-128.

26

27   _____
     [1] For purposes of Roblox's Rule 12(b)(6) motion, the Court assumes the truth of the allegations in
28   Robinson's complaint.

United States District Court
Northern District of California

1    Roblox operates an online gaming platform. Users can access the Roblox platform to play

2    games created and uploaded by developers using Roblox software. Roblox Studio provides a

3    toolkit for developers to use to create content for the Roblox platform and the Roblox cloud

4    contains the underlying infrastructure to host content delivered through the Roblox platform.

5    To create games for the Roblox platform, developers can use assets—images, models,

6    videos, fonts, and audio files—that are stored within the Roblox cloud, or they can import their

7    own assets directly into Roblox Studio. Robinson alleges that when a developer imports their own

8    asset, that asset is reviewed by the Roblox moderation team to determine whether it adheres to

9    Roblox's Marketplace Policy. If the asset passes review, it is assigned a unique ID, which allows it

10   to be shared and downloaded on the platform by other users. When a file is imported to the Roblox

11   platform, the file is copied and distributed to Roblox, which then hosts it on its servers.

12   According to Robinson, Roblox users can download songs from the Roblox platform to

13   their own "boombox," a feature within the platform, for a fee. When a user plays a song on their

14   boombox, other users in their vicinity can hear it. Users can also sell their boomboxes, including

15   their downloaded songs, and Roblox shares in the profit. Additionally, Roblox users can download

16   assets from the platform to their personal hard drives in order to access them outside of the Roblox

17   platform.

18   Robinson alleges that, in 2016, defendant Alex Binello, a game designer, created an

19   interactive role-playing game called MeepCity for the Roblox platform. MeepCity became

20   Roblox's most popular game, played by millions of users and visited more than a billion times.

21   The game included a feature that allowed users to gather and talk with each other in a pizzeria,

22   which included a piano that users could play to earn points within the game. Robinson alleges that

23   from 2016 to 2022, Robinson's recording of the song Maple Leaf Rag played on a two-minute

24   loop every time a user sat down at the piano.

25   Robinson alleges that Binello uploaded Robinson's recording of Maple Leaf Rag for use in

26   MeepCity without Robinson's knowledge or permission and that Roblox employees reviewed and

27   approved the uploaded audio file, created a copy, assigned it a unique asset ID, and stored the copy

28   on the Roblox server. He alleges that "thousands, if not millions," of Roblox users downloaded his

2

1    work to their boomboxes for use on the Roblox platform, each paying a fee to Roblox for doing

2    so, and that "thousands, if not millions," of users downloaded his work from the Roblox server to

3    their own personal hard drives.

4         Robinson asserts three claims against Roblox: (1) direct copyright infringement; (2)

5    contributory copyright infringement; and (3) vicarious copyright infringement.

6         Roblox now moves to dismiss pursuant to Rule 12(b)(6) and requests incorporation by

7    reference and judicial notice of several Roblox webpages.

### LEGAL STANDARD

9         Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain

10   statement of the claim showing that the pleader is entitled to relief." If the complaint fails to state a

11   claim, the defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6).

12   Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable

13   inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

14   678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

15   cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

16   *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule

17   12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible

18   on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

19        In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the

20   complaint as true and construe the pleadings in the light most favorable" to the non-moving

21   party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal

22   conclusions "can provide the [complaint's] framework," the Court will not assume they are correct

23   unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept

24   as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

25   inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell*

26   *v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

27        The Court may take judicial notice of "a fact that is not subject to reasonable dispute"

28   because it is "generally known" or "can be accurately and readily determined from sources whose

United States District Court
Northern District of California

United States District Court
Northern District of California

1    accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The doctrine of incorporation by

2    reference permits the Court to treat an extrinsic document as if it were part of the complaint if the

3    pleading "refers extensively to the document" or if "the document forms the basis" of a claim.

4    *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). But "if the document

5    merely creates a defense to the well-pled allegations in the complaint, then that document did not

6    necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert

7    their own version of events into the complaint to defeat otherwise cognizable claims." *Khoja*, 899

8    F.3d at 1002.

9                                          **ANALYSIS**

10   **I.    Judicial notice**

11          In support of its motion to dismiss, Roblox submitted several webpages that it contends are

12   incorporated by reference into the complaint or subject to judicial notice such that they should be

13   considered on this motion. Those webpages are the 2024 Roblox Terms of Use, the 2021 Roblox

14   Terms of Use archived on the WayBack Machine, the Roblox webpage entitled "Moderation," the

15   Roblox webpage entitled "DMCA Guidelines," and the Roblox Community Standards.

16          Roblox asserts that the Court should incorporate by reference Roblox's terms of use

17   because "the use and misuse of the Roblox platform is the crux of Plaintiff's claims." Although

18   Robinson's claims generally relate to the use of the Roblox platform, Roblox has not shown that

19   the existence or contents of the terms of use are in any way material to those claims. *See Toyo Tire*

20   *Holdings of Ams. Inc. v. Ameri & Partners, Inc.*, No. 23-CV-01300, 2024 U.S. Dist. LEXIS

21   75204, n. 1 (C.D. Cal. March 13, 2024) ("The court need not consider [the attached exhibits]

22   under the incorporation by reference doctrine because they do not materially bear on the court's

23   analysis."). This case is readily distinguishable from *Libman v. Apple, Inc.*, No. 22-CV-07069-

24   EJD, 2024 WL 4314791 (N.D. Cal. Sept. 26, 2024), in which the court found that Apple's

25   welcome screens were incorporated by reference because the plaintiff's "claims each relate[d] to

26   whether Apple disclosed its [data] collection practices" and the welcome screens "reflect[ed]

27   Apple's representations about its privacy practices and privacy settings." *Libman*, 2024 WL

28   4314791, at *4. None of Robinson's claims depends on any representations in Roblox's terms of

                                                4

United States District Court
Northern District of California

1    use. Roblox also proposes that the terms of use should be incorporated by reference because every

2    Roblox webpage that the complaint references contains a link to those terms. But the webpages

3    that the complaint references do not contain the terms of use themselves, only their web addresses,

4    and the links have no relevance to Robinson's claims. The inadvertent and irrelevant reference to

5    the terms is not sufficient to render them incorporated by reference into the complaint.

6          Roblox requests incorporation by reference of its "Moderation" webpage because

7    Robinson's claims reference it extensively. Indeed, Roblox's moderation practices are central to

8    Robinson's claims and Robinson relies on the "Moderation" webpage for those allegations.

9    The Court therefore grants Roblox's request for the "Moderation" webpage's incorporation by

10    reference.

11          With respect to the various webpages Roblox has submitted, the Court will take judicial

12    notice of their existence because they are publicly available from a source whose accuracy cannot

13    reasonably be questioned and whose contents can be accurately determined. *See In re Meta Pixel*

14    *Tax Filing Cases*, 724 F. Supp. 3d 987, 1001 (N.D. Cal. 2024) (holding that publicly available

15    websites are proper subjects of judicial notice). This notice is limited, however, to the existence

16    and contents of the webpages, and does not include notice of the truth of any representations made

17    therein. *See Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 762 (C.D. Cal. 2015);

18    *Khoja*, 899 F.3d at 999.

19    **II.    Direct copyright infringement**

20          To state a claim for direct copyright infringement, a plaintiff must plead ownership of the

21    copyrighted material, violation of a right granted to copyright holders under 17 U.S.C. § 106, and

22    causation (also referred to as "volitional conduct"). *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d

23    657, 666 (9th Cir. 2017).

24          Roblox contends that Robinson fails to state a claim for direct copyright infringement

25    because he has not alleged facts showing that Roblox directly caused any infringement of

26    Robinson's copyright. The central question in the causation or volitional conduct inquiry is "who

27    is close enough to the [infringing] event to be considered the most important cause." *Id.* (cleaned

28    up). The volitional conduct element "simply stands for the unremarkable proposition that

United States District Court
Northern District of California

1    proximate causation historically underlines copyright infringement liability no less than other

2    torts." *Id.* (cleaned up). "[D]irect liability must be premised on conduct that can reasonably be

3    described as the *direct cause* of the infringement." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723,

4    731 (9th Cir. 2019) (cleaned up). Direct infringement "requires copying *by* the defendant, which

5    comprises a requirement that the defendant cause the copying." *Fox Broad. Co. v. Dish Network*

6    *L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2014) (cleaned up).

7         Roblox contends that Robinson alleges facts showing only that it operated an "automated,

8    user-controlled system," an act that is too indirectly related to the cause of any infringement to

9    constitute volitional conduct. But Robinson alleges that Roblox took a more active role in the

10   upload of his work. Robinson alleges that when a user or developer imports a file containing

11   music, that file is reviewed by the Roblox moderation team to determine whether it adheres to

12   Roblox's Marketplace Policy. The file is only transmitted after the moderation team's approval.

13   Robinson thus alleges that Roblox employees reviewed and approved Binello's upload of

14   Robinson's copyrighted work, created a copy of that work, and stored that copy on the Roblox

15   server. Accordingly, Robinson has pleaded that Roblox *caused* the copying of Robinson's work.

16        Roblox's alleged involvement in the infringement of Robinson's copyright is

17   distinguishable from the conduct at issue in *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723 (9th

18   Cir. 2019). In that case, the Ninth Circuit affirmed a district court's determination that Zillow did

19   not engage in the volitional conduct necessary to support a finding of direct liability where it

20   merely operated a website displaying photos that other parties had provided. Zillow did not select

21   the photos, did not "exercise control over [the] photos beyond the general operation of its

22   website," and promptly removed allegedly infringing photos when it was notified about them. *Id.*

23   at 733 (cleaned up). Here, by contrast, Robinson alleges that, through the actions of the

24   moderation team, Roblox in fact selected and exercised control over the content that a third party

25   provided.

26        Roblox maintains that "if Roblox did *not* have any moderators, then the upload would still

27   have occurred." Perhaps. But the question before the Court is not whether the alleged copyright

28   infringement would have occurred if Roblox had operated its platform differently; the question is

1    whether, given that Roblox allegedly had a moderation team that reviewed and approved all

2    uploads, the moderation team's approval of Binello's upload was a but-for cause of the alleged

3    infringement of Robinson's copyright. Robinson alleges that it was. He asserts that, given

4    Roblox's moderation policies, his copyrighted work would not have been uploaded to the platform

5    but for the actions of Roblox's moderators.

6         Roblox also contends that the allegations regarding the moderation team are conclusory

7    and involve "nothing but speculation." Although Robinson has not alleged facts detailing every

8    step in the moderation process, the facts that he has alleged—that after Binello uploaded

9    Robinson's recording, Roblox's moderation team reviewed the file to ensure that it adhered to its

10   Marketplace Policy, approved the upload, created a copy, assigned the file a unique asset ID, and

11   stored the copy on the Roblox server—are sufficient to state a claim at the motion to dismiss

12   stage. The Supreme Court underscored in *Iqbal* that "determining whether a complaint states a

13   plausible claim for relief will … be a context-specific task that requires the reviewing court to

14   draw on its judicial experience and common sense." 556 U.S. at 679. In the context of allegations

15   concerning a process generally concealed from the public and largely inscrutable absent discovery,

16   demanding even greater specificity would effectively foreclose liability, far exceeding the

17   demands of Rule 8. Fed. R. Civ. P. 8.

18        Even if its moderation team did engage in volitional conduct, Roblox maintains, any direct

19   copyright infringement claim is time-barred because the latest time that its volitional conduct

20   could have occurred was the end of 2016. The statute of limitations for federal copyright claims is

21   three years, 17 U.S.C. § 507, and Robinson did not bring this action until 2024—five years after

22   the limitations period had expired, according to Roblox.

23        In the Ninth Circuit, the statute of limitations is an affirmative defense that can provide the

24   basis for dismissing a claim at the 12(b)(6) stage only if the allegations in the complaint or

25   judicially noticeable materials establish beyond dispute that the statute ran prior to the filing of the

26   case. *A.B. by & Through Turner v. Google LLC*, 737 F. Supp. 3d 869, 877–88 (N.D. Cal. 2024);

27   *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ("When a motion to dismiss is

28   based on the running of the statute of limitations, it can be granted only if the assertions of the

United States District Court
Northern District of California

1      complaint, read with the required liberality, would not permit the plaintiff to prove that the statute

2      was tolled."). Thus, to survive a motion to dismiss, plaintiffs "simply need to plead facts

3      demonstrating a potential factual dispute that could affect whether the defense applies." *Rabin v.*

4      *Google LLC*, 725 F.Supp.3d 1028, 1031 (N.D. Cal. Mar. 26, 2024).

5            Here, the parties dispute when Robinson's statute of limitations began to run. Under the

6      discovery rule, a copyright infringement claim accrues when the copyright owner reasonably

7      should have discovered the alleged infringement. *See Starz Entertainment, LLC v. MGM Domestic*

8      *Television Distribution, LLC*, 39 F.4th 1236 (9th Cir. 2022). Roblox asserts that the popularity of

9      Roblox and MeepCity put Robinson on notice of the infringement of his work before 2021. But

10     the inferential chain from the general popularity of a gaming platform and one of the games on it,

11     on the one hand, to a musician's awareness that his decades-old recording might be being used in

12     an infringing matter, on the other, is too attenuated. Although copyright owners have a duty of

13     diligence to investigate potential infringement when some action calls their attention to it, they are

14     not required to actively prowl the internet to ensure no one is using their music in video games.

15     *See id.*; *Starz Ent., LLC v. MGM Domestic Television Distribution, LLC,* 510 F. Supp. 3d 878, 888

16     (C.D. Cal. 2021) (cleaned up) ("Although a copyright holder has a duty of diligence to investigate

17     potential infringements, inquiry notice must be triggered by some event or series of events that

18     comes to the attention of the aggrieved party."); *Starz*, 510 F. Supp. 3d at 888 (quoting *Warren*

19     *Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 45 (1st Cir. 2008)) ("The familiar aphorism

20     teaches that where there is smoke there is fire; but smoke, or something tantamount to it, is

21     necessary to put a person on inquiry notice that a fire has started."). Roblox has not identified any

22     specific allegation in the complaint establishing that Robinson was on inquiry notice of the alleged

23     copyright infringement prior to 2021. Roblox has thus failed to establish beyond dispute that

24     Robinson's claim for direct copyright infringement is time-barred.

25     **III.    Contributory copyright infringement**

26           To state a claim for contributory copyright infringement, a plaintiff must allege that the

27     defendant "(1) knew of the direct infringement; and (2) [ ] either induced, caused, or materially

28     contributed to the infringing conduct." *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068,

United States District Court
Northern District of California

United States District Court
Northern District of California

1072 (9th Cir. 2013). The first element "requires more than a generalized knowledge by the [defendant] of the possibility of infringement." *Id.* The plaintiff must allege "actual knowledge of specific acts of infringement." *Id.* (citation omitted); *see also Long v. Dorset*, 854 F. App'x 861, 864 (9th Cir. 2021); *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001) (cleaned up) ("[I]f a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement. Conversely, absent any specific information which identifies infringing activity, a computer system operator cannot be liable for contributory infringement merely because the structure of the system allows for the exchange of copyrighted material.").

Robinson contends that Roblox's conduct meets the knowledge requirement because Roblox was generally aware of the copyright-related risks of its business activities. He alleges that Roblox has a history of litigation involving copyright claims and that Roblox had ample opportunity to ensure the works uploaded to its server did not infringe anyone's copyrights. He also argues that Roblox was obligated to undertake a reasonable inquiry to determine whether a work was licensed for Roblox's use or in the public domain.

These allegations are not sufficient to allege the knowledge necessary for contributory copyright infringement liability. Robinson must show actual knowledge of *specific acts* of infringement, not *generalized knowledge of the possibility of infringement*. Roblox has not pleaded facts to show that Roblox was aware that the recording of Maple Leaf Rag that Binello uploaded was Robinson's copyright-protected audio recording.[2] Accordingly, Robinson fails to state a claim against Roblox for contributory copyright infringement.

## IV.    Vicarious copyright infringement

A defendant "is liable for vicarious infringement if it (1) has the right and ability to control … users' putatively infringing activity and (2) derives a direct financial benefit from their activity." *MDY Indus., L.L.C. v. Blizzard Ent., Inc.*, 629 F.3d 928, 938 (9th Cir. 2010). A defendant "infringes vicariously by profiting from direct infringement while declining to exercise

---

[2] Notably, it is undisputed that the song Maple Leaf Rag is now in the public domain.

1    a right to stop or limit it." *MGM Studios Inc v. Grokster, Ltd.*, 545 U.S. 913, 914 (2005).

2         Roblox does not challenge Robinson's allegation that it had the right and ability to permit

3    or prevent users' copyright infringing activity on its platform. It does, however, contend that it did

4    not derive a direct financial benefit either from Binello's alleged infringement of Robinson's

5    copyright when he uploaded his work to the Roblox server or from other users' infringement of

6    that copyright when they downloaded the work to their boomboxes.

7         A direct financial benefit exists where there is a causal relationship between the specific

8    infringing conduct and a financial benefit to the defendant. *Perfect 10*, 847 F.3d at 673 (quoting

9    *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)) ("The essential aspect of the 'direct

10   financial benefit' inquiry is whether there is a causal relationship between the infringing activity

11   and any financial benefit a defendant reaps, regardless of how substantial the benefit is in

12   proportion to a defendant's overall profits.").

13        Roblox asserts that it did not derive a direct financial benefit from any infringement of

14   Robinson's copyright because users did not seek out Roblox or MeepCity specifically because of

15   Robinson's recording of Maple Leaf Rag. But Roblox misconstrues the direct financial benefit

16   requirement. When the financial benefit to a defendant is alleged to come from the use of the

17   defendant's goods or services *generally*, rather than directly from the copyright infringement,

18   courts have held that plaintiffs must show that individuals sought out the defendant's goods or

19   services specifically because of the availability of infringing material. *See, e.g.*, *Perfect 10*, 847

20   F.3d at 673; *Stross v. Meta Platforms, Inc.*, No. 2:21-CV-08023, 2022 WL 1843129, at *3 (C.D.

21   Cal. Apr. 6, 2022); *Ellison*, 357 F.3d at 1078–79. Absent such a showing, there would be no

22   causal link between the infringement and the financial benefit. But where, as here, the financial

23   benefit is alleged to come directly from specific acts of infringement—specifically, from fees that

24   were paid for each upload or download of the specific infringing work—there is a clear causal link

25   between the infringement and the financial benefit. Because the financial benefit to Roblox is not

26   alleged to derive from individuals' use of Roblox or MeepCity generally, Robinson need not

27   allege a causal connection between individuals' use of the platform or game and the alleged

28   infringement.

United States District Court
Northern District of California

United States District Court
Northern District of California

1     Robinson alleges that Roblox makes money by charging developers and users to import

2   assets and that Binello uploaded Robinson's recording of Maple Leaf Rag as an asset to be used in

3   MeepCity. It can plausibly be inferred from Robinson's allegations that Roblox charged Binello a

4   fee to upload Robinson's work, deriving a direct financial benefit from Binello's alleged act of

5   copyright infringement. Additionally, Robinson alleges that "thousands, if not millions," of users

6   each paid Roblox a fee to download Robinson's work for use within the Roblox platform. Those

7   fees constitute a direct financial benefit that Roblox derived from those users' acts of infringing

8   Robinson's copyright.

9     Finally, Roblox contends that downloading the work to Roblox boomboxes cannot be

10   copyright infringement because songs downloaded to boomboxes can be played solely within the

11   platform. But copying is copying even if the use of the copy is restricted.

12     Accordingly, Robinson's complaint states a claim for vicarious copyright infringement.

13   **V.     DMCA safe harbor**

14     Finally, Roblox asserts that even if Robinson adequately states a claim against it, his

15   complaint should be dismissed because Roblox is entitled to the protections of the "safe harbor"

16   provided by the Digital Millenium Copyright Act (DMCA). This safe harbor applies to online

17   service providers who are unaware of infringing material on their sites or who, upon notice,

18   expeditiously remove such material. *See UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718

19   F.3d 1006, 1014, 1028 (9th Cir. 2013); 17 U.S.C. § 512(c)(1)(A). To be eligible for the protections

20   of 17 U.S.C. § 512(c), a defendant must show it is a "service provider" and "that the infringing

21   material was stored at the direction of the user." *Mavrix Photographs, LLC v. Livejournal, Inc.*,

22   873 F.3d 1045, 1052 (9th Cir. 2017). "If it meets that threshold requirement, the service provider

23   must then show that (1) it lacked actual or red flag knowledge of the infringing material; and (2) it

24   did not receive a financial benefit directly attributable to the infringing activity, in a case in which

25   the service provider has the right and ability to control such activity." *Id.* (cleaned up).

26     The safe harbor under 17 U.S.C. §512(c) is an affirmative defense. As explained above,

27   affirmative defenses generally "may not be raised on a motion to dismiss except when the defense

28   raises no disputed issues of fact." *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir.

United States District Court
Northern District of California

1    2018). The defendant must show there is an obvious bar to securing relief evident on the face of

2    the complaint or from judicially noticeable materials. "Only when the plaintiff pleads itself out of

3    court—that is, admits all the ingredients of an impenetrable defense—may a complaint that

4    otherwise states a claim be dismissed under Rule 12(b)(6). *Durnford v. MusclePharm Corp.*, 907

5    F.3d 595, 603 n.8 (9th Cir. 2018) (citation omitted).

6           Robinson's allegation that Roblox derived a financial benefit directly attributable to the

7    infringement of his copyright is sufficient on its own to preclude Roblox from establishing beyond

8    dispute that it is entitled to the protections of the DMCA safe harbor. *See* 17 U.S.C.

9    § 512(c)(1)(B). In addition, its DMCA safe harbor defense fails because the webpages that Roblox

10   relies upon to establish that defense do not establish beyond dispute that Roblox satisfies the safe

11   harbor's other requirements. Roblox maintains that its Terms of Use, DMCA Guidelines, and

12   Community Standards establish that it has policies in place to prohibit copyright infringement and

13   comply with the DMCA, including a procedure for users to notify it about infringing material and

14   a policy of taking down that material upon receiving a valid request. Although the Court can take

15   judicial notice of the webpages' existence and content, it cannot take judicial notice of the truth of

16   any representations therein. While the Court can conclude from those materials that Roblox

17   represented to the public that it had a policy of complying with the DMCA, the Court cannot

18   conclude that Roblox actually had such a policy or complied with the terms stated therein.

19                                 **CONCLUSION**

20          For the foregoing reasons, the Court grants Roblox's motion to dismiss the contributory

21   copyright infringement claim but denies its motion to dismiss the direct and vicarious copyright

22   infringement claims. Robinson may file an amended complaint within 21 days of this order.

23          **IT IS SO ORDERED.**

24   Dated: March 24, 2025

25

26                                      _____

27                                      P. Casey Pitts
                                   United States District Judge

28